IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SARA SURBER, individually and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br><br>vs.<br><br>MCCARTHY, BURGESS & WOLFF, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 14-0309-CG-M<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

McCarthy, Burgess & Wolff, Inc. ("Defendant") and Sara Surber ("Plaintiff") ask this Court to determine certain legal issues pursuant to the Fair Debt Collection Practices Act ("FDCPA") based on the underlying stipulated facts. (Doc. 34-1; Doc. 39-1). Defendant moved for summary judgment, and specifically asks the Court to decide whether Plaintiff incurred a "debt" as defined by the FDCPA. (Doc. 33, p. 3). Plaintiff responded to the motion for summary judgment, and asserts the "only thing at issue is whether the 'charge back' constitutes a transaction as that term is used in the FDCPA." (Doc. 38, p. 2). Defendant replied (Doc. 40), and filed a motion to strike Plaintiff's affidavit from her response. (Doc. 41). Plaintiff filed a response in opposition to Defendant's motion to strike. (Doc. 44). After careful consideration and for the reasons set forth below, Defendant's motion for

summary judgment is due to be **GRANTED,** and Defendant's motion to strike is due to be **DENIED**.

I. **FACTS**

The pertinent facts are not in dispute. In January 2012, Plaintiff entered into an "Agent Contract" with Banker's Life & Casualty Company ("Banker's Life") to sell insurance. (Doc. 39-1, p. 1). Banker's Life compensated Plaintiff by paying commission "as set forth in the attached Commission Schedules" to the contract. (Doc. 39-1, p. 5). The Commission Schedule and Commission Schedule Notes describe how commissions are "allowed on premiums paid for policies and riders approved and issued by [Banker's Life] and accepted by the applicant." (Doc. 39-1, p. 15). Plaintiff attests that if a policy lapsed before the policyholder paid the entire premium, Banker's Life "charged back" a pro-rata portion of the commission from Plaintiff. (Doc. 39-2, p. 1).

Banker's Life and Plaintiff terminated their contract on October 4, 2012. (Doc. 39-1, p. 1). Upon termination of the Agent Contract, Banker's Life alleged Plaintiff owed it an outstanding balance as a result of overpaid commissions, or "charge backs," that she did not earn after customers failed to pay their insurance premiums. (Doc. 39-1, pp. 1 – 2). Banker's Life retained Defendant, a debt collection agency, to collect repayment of the alleged overpayment of unearned commissions from Plaintiff. (Doc. 39-1, p. 2). Defendant and Plaintiff agree that the "outstanding balance in dispute"

"is not the result of an outstanding bill or debt owed for goods or services provided by [Banker's Life] to [Plaintiff]." (Doc. 39-1, p. 2). Plaintiff states she used her commission from Banker's Life for personal expenses, such as her "rent, cell phone bill, auto insurance, vehicle maintenance and repairs, gasoline, food, groceries, and other personal bills and expenses." (Doc. 39-2, p. 2). Defendant claims to have no knowledge upon which to admit this as a fact. (Doc. 39-1, p. 3). The parties ultimately disagree as to whether the FDCPA applies to the "charge backs" at issue.

## II.   STANDARD OF REVIEW

The court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law applicable to the case determines what is material. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating the movant's arguments, the court must view all evidence and resolve all doubts in the light most favorable to the nonmovant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed

3

facts, then [the court] should deny summary judgment." Hinesville Bank v. Pony Express Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citation omitted). The basic issue before the court then is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton, 358 F.3d at 809.[1]

III.  ANALYSIS

    a. Motion to Strike

Defendant moves the Court to strike Plaintiff's affidavit (Doc. 41), which she submitted in response to Defendant's motion for summary judgment. (Doc. 39-2). Plaintiff's affidavit is brief, and it explains how Banker's Life compensated her and how she used her commission payments. (Doc. 39-2, pp. 1 – 2). Defendant argues the affidavit is outside the scope of the parties' stipulated facts. (Doc. 41, p. 2). Defendant also states, however, that "paragraph 16 of the Stipulation specifically references Surber's

---

[1] The "least sophisticated consumer" standard analyzes whether a debt collector's practices would deceive or mislead a hypothetical least sophisticated consumer. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175-1176 (11th Cir.1985). The least sophisticated consumer standard does not change the standard of review for summary judgment in this case.

4

contentions with regard to the commission payments made to her by [Banker's Life] and it was acknowledged the Defendant…had no knowledge upon which to admit such facts to be true so they would not be deemed admitted." (Doc. 41, p. 2). Defendant further argues the parties discussed this issue in a conference call with the Magistrate Judge, and they agreed such facts would not be included within the Stipulation of Facts. (Doc. 41, p. 2).

In response, Plaintiff asserts the motion to strike is procedurally improper, and cites Federal Rules of Civil Procedure 7(a), 12(f), and 56(c)(4) to support her argument. (Doc. 44, p. 2). Plaintiff also notes Defendant did not cite a single rule or case law in its motion to strike. (Doc. 44, p. 2). Plaintiff further argues the parties were unable to stipulate to certain facts, and the Magistrate Judge instructed Plaintiff to file an affidavit at the summary judgment stage regarding the unstipulated facts. (Doc. 44, p. 3).

The Court finds that the affidavit is relevant and based on the personal knowledge of Plaintiff. The Court also finds the affidavit is not barred simply because the parties could not agree to the particular facts Plaintiff alleges in her affidavit. Moreover, the parties already state in their stipulated facts that Plaintiff used her commission primarily for personal, family, or household purposes, and Defendant cannot admit these facts as true because it does not know how Plaintiff spent her money. (Doc. 39-1, p. 3). Plaintiff merely provides more specificity about her expenses in her affidavit. (Doc. 39-2, p. 2). The Court acknowledges Defendant cannot admit these facts

5

as true, but the Court finds Defendant's reasons for striking the affidavit unpersuasive. The motion to strike (Doc. 41) is therefore DENIED.

### b. Fair Debt Collection Practices Act

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Among other things, the FDCPA provides a remedy for consumers[2] subjected to abusive, deceptive, and unfair debt collection practices by debt collectors. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010). A threshold requirement for application of the FDCPA is whether the prohibited practices are used in an attempt to collect a "debt." Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836 – 37 (11th Cir. 2010) (to recover under the FDCPA, a plaintiff must make a threshold showing that the money being collected qualifies as a "debt").

For FDCPA purposes, the mere obligation to pay does not constitute a debt; rather, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The term "consumer" means "any natural person obligated or allegedly obligated to pay any debt."

---

[2] When enacting the FDCPA, Congress stated "[t]his bill applies only to debts contracted by consumers for personal, family, or household purposes; it has no application to the collection of commercial accounts." S. Rep. No. 95-382, at 3 (1977), reprinted in U.S.C.C.A.N. 1695, 1697.

15 U.S.C. § 1692a(3). The term "transaction" is not defined in the FDCPA. At a minimum, however, "a 'transaction' must involve some kind of business dealing or other consensual obligation." Oppenheim, 627 F.3d 833, 838 (11th Cir. 2010) (citation omitted). Thus, as the Eleventh Circuit succinctly noted, the FDCPA applies to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes. Id. at 837. The Court must analyze each of the three elements separately to determine whether a payment obligation constitutes a "debt" under the FDCPA. Id.

The term "debt" therefore limits the scope of the FDCPA because not all obligations to pay satisfy each of the three definitional elements. Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997); see also Ladick v. Van Gemert, 146 F.3d 1205, 1206–07 (10th Cir. 1998) (not all obligations are "debts" under the FDCPA because the money, property, insurance, or services that are the subject of the transaction must be primarily for "personal, family, or household purposes"). Courts have considered whether a number of particular obligations constitute a debt for purposes of the FDCPA.[3] A review of case law shows FDCPA "debts" may

---

[3] See, e.g., Hawthorne v. Mac Adjustment Inc., 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that obligation to pay damages arising from tort was not a "transaction" under the FDCPA); Beggs v. Rossi, 145 F.3d 511, 512 (2d Cir. 1998) (holding that personal property taxes were not "debt" because they did not arise from a transaction); Mabe v. G.C. Servs. Ltd. P'ship, 32 F.3d 86, 88 (4th Cir. 1994) (holding that child support payments were not "debt" because they were "not incurred to receive consumer goods or services"); Zimmerman

include federal student loans, membership dues in a recreational campground, a patient's account at a medical center, an insurer's contract-based subrogation claim, rental obligations, mortgage foreclosure, and homeowners' association fees.[4] In contrast, certain dishonored checks, legal fees in post-divorce litigation, library fines, equipment lease obligations, loans for venture capital, and tax obligations are not "debts" under the FDCPA.[5] The parties in this case similarly ask the Court to decide whether the alleged commission obligation qualifies as a "debt" under the FDCPA.

### c. Commission Payments did not arise from a Consumer Transaction

---

v. HBO Affiliate Grp., 834 F.2d 1163, 1168 (3d Cir. 1987) (holding that plaintiff who illegally stole television signals could not assert FDCPA claim due to lack of contractual relationship).

[4] Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1124 (11th Cir. 2004) (student loans); Dorsey v. Morgan, 760 F. Supp. 509, 514 (D. Md. 1991) (campground membership dues); Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 526 (E.D. Pa. 1996) (patient account); Hamilton v. United Healthcare of Louisiana, Inc., 310 F.3d 385 (5th Cir. 2002) (group health insurer's contract-based subrogation claim); Romea v. Heiberger & Associates, 163 F.3d 111, 115 – 16 (2d Cir. 1998) (back rent); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir. 2013) (mortgage foreclosure); Ladick v. Van Gemert, 146 F.3d 1205, 1207 (10th Cir. 1998) (condominium assessment).

[5] Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 407 (3d Cir. 2000) (dishonored checks are not debts) but see Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1323 (7th Cir. 1997) (dishonored checks are "debts" under FDCPA); Beal v. Himmel & Bernstein, LLP, 615 F. Supp. 2d 214, 217 (S.D.N.Y. 2009) (legal fees incurred in post-divorce litigation); Riebe v. Juergensmeyer & Associates, 979 F. Supp. 1218, 1221 (N.D. Ill. 1997) (library fines); Hardy v. N. Leasing Sys., Inc., 953 F. Supp. 2d 150, 161 (D.D.C. 2013) (equipment leases); Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1069 (9th Cir. 1992) (loan for venture capital); Boyd v. J.E. Robert Co., 765 F.3d 123, 126 (2d Cir. 2014) (water and sewer liens, like tax liens, are outside the scope of the FDCPA).

The Court first considers whether this case concerns a "consumer" debt arising out of a "transaction" involving money, property, insurance or services. Oppenheim, 627 F. 3d at 837. Plaintiff argues the debt falls under the FDCPA because it arose out of a transaction between parties to a contract (Doc. 38, p. 8), and she "used the commissions she earned for her ordinary living expenses such as groceries, gasoline, insurance, rent, and utilities." (Doc. 38, p. 7). Defendant maintains the outstanding balance in dispute "is not the result of an outstanding bill or debt owed for goods or services provided by [Banker's Life] to [Plaintiff]," therefore it is not a "debt." (Doc. 33, p. 7).

As other courts have recognized, the FDCPA "contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." Staub v. Harris, 626 F.2d 275 (3d Cir. 1980). FDCPA "debts" thus require a consumer obligation created through the underlying transaction. See, e.g., Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th Cir. 1997) (as long as the transaction creates an obligation to pay, a debt is created); Cook v. Hamrick, 278 F. Supp. 2d 1202, 1205 (D. Colo. 2003) (collecting cases and finding a "debt" is created when a transaction creates an obligation to pay).

In this case, the Court finds there is not a consumer transaction that creates a "debt" under the FDCPA. Although Plaintiff received money pursuant to a contract, this is not a consumer transaction involving the

purchase of goods, services, or other item of value. Instead, an employer, Banker's Life, paid an independent contractor, Plaintiff, commission. Defendant and Plaintiff also expressly agreed that the money owed "is not the result of an outstanding bill or debt owed for goods or services provided by [Banker's Life] to [Plaintiff]." (Doc. 39-1, p. 2).

Furthermore, Plaintiff's obligation did not arise when she used the money to buy groceries, gasoline, or pay rent. Rather, the debt arose because Banker's Life allegedly paid Plaintiff more commission than she earned. This is plainly a commercial transaction that falls outside the type of consumer transaction contemplated by the FDCPA. See Graham v. Tasa Grp., Inc., 2015 WL 875228, at *12 (N.D. Ala. Mar. 2, 2015) (debts arising out of commercial or business transactions generally fall outside the FDCPA). Plaintiff, however, conflates the initial transaction, *i.e.*, getting paid as an independent contractor, with later transactions, *i.e.*, using the money to buy goods. Simply because Plaintiff attests she used her earnings to pay her ordinary living expenses does not convert the original transaction, receiving commission payments, into a consumer transaction that creates a "debt" under the FDCPA.

Additionally, both parties cite Arnold v. Truemper, 833 F. Supp. 678 (N.D. Ill. 1993) and Orenbuch v. Leopold, Gross & Sommers, 586 F. Supp. 2d 105 (E.D.N.Y. 2008), to argue their respective legal positions. (Doc. 33, pp. 5 – 6; Doc. 38, pp. 8 – 9). Defendant states these two cases show that mere

"overpayments," like unearned commissions, do not fall into the purview of the FDCPA. (Doc. 33, p. 6). Plaintiff contends the two cases are distinguishable because there is no overpayment here, and the debt arose out of a transaction between parties to a contract. (Doc. 38, pp. 8 – 9). The Eleventh Circuit previously noted that Arnold and Orenbuch did not involve a contract that created an obligation to pay. Oppenheim, 627 F.3d at 838 (there is no indication that the plaintiffs in Arnold or Orenbuch had a contractual obligation dictating their liability in the event of any overpayment). Yet the Eleventh Circuit went on to say, "Arnold and Orenbuch do not stand for the proposition that one who improperly receives money does not incur a 'debt' subject to the FDCPA. Rather, they stand for the proposition that a consumer's obligation must arise from a 'transaction' in order for the FDCPA to apply." Oppenheim, 627 F.3d at 838. This Court agrees that the FDCPA requires a consumer "transaction," and based on the stipulated facts a consumer transaction did not occur.

Plaintiff also argues that courts "look at the purpose for which money, goods, or services were used when determining the purpose of a transaction." (Doc. 38, p. 9). Thus in cases involving loans, extensions of credit, or credit cards, courts may examine whether the money is used for business or personal items. (Doc. 38, pp. 9 – 10). But this case does not involve a loan or an extension of credit. It involves only Banker's Life paying commission to Plaintiff, and Plaintiff possibly receiving more commission than she is owed.

Those are the confines of the underlying transaction. Plaintiff did not agree to a loan, or make charges on a credit card that she is obligated to repay. As a result, the Court does not need to analyze whether Plaintiff spent her money on personal, family, or household goods or services. See Oppenheim, 627 F.3d at 838 (citations omitted).

The Court does not opine on whether Plaintiff actually owes the "charge backs" to Banker's Life. The Agent Contract and Commission Schedules are opaque (Doc. 39, Exh. 1), and the parties have not asked the Court to resolve that issue. Instead, the Court finds merely that Plaintiff is not a consumer involved in a transaction with Banker's Life for goods or services, so the alleged outstanding balance does not amount to a debt under the FDCPA.

## CONCLUSION

In light of the foregoing, Defendant's motion for summary judgment is **GRANTED**. (Doc. 33). Defendant's motion to strike is **DENIED**. (Doc. 41).

**DONE and ORDERED** this 11th day of May, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE