[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12296
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00309-CG-M


SARA SURBER,
individually and on behalf of all similarly situated individuals,

                                       Plaintiff - Appellant,

versus

MCCARTHY, BURGESS & WOLFF, INC.,

                                       Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(December 31, 2015)

Before MARCUS, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Sara Surber appeals the district court's grant of summary judgment in favor of McCarthy, Burgess & Wolff, Inc. ("MB&W") on her claim alleging that MB&W violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  After careful review, we affirm.

I.

Beginning in January 2012, Surber sold insurance policies for Bankers Life & Casualty Company ("Bankers Life") as an independent contractor.  Bankers Life paid Surber a commission calculated as a percentage of the annual premium insureds paid to Bankers Life for the policies she sold.  Bankers Life paid Surber the entire commission earned on a policy upfront, even if the insured paid Bankers Life the premium in installments.  If an insured failed to pay the entire annual premium, Banker's Life would "charge back" to Surber the pro rata portion of the commission for the premium the insured failed to pay.

In October 2012, Bankers Life and Surber terminated their relationship.  Bankers Life claimed that Surber owed $3,954.87 in charge backs for commissions related to unpaid premiums, which Surber disputed.  Bankers Life hired MB&W, a collection agency, to collect from Surber.  MB&W sent Surber a letter demanding payment.

Shortly after receiving the letter, Surber filed this action in district court, alleging that MB&W failed to provide disclosures the FDCPA required.  She

sought to represent a class of similarly situated individuals who had received similar collection letters from MB&W.  After MB&W answered and before taking any discovery, the parties requested a conference with the district court regarding scheduling.  Based on discussion at the conference, the district court entered an order stating that "whether Plaintiff has [a] viable individual claim under the [FDCPA] is a legal issue which can be decided now by the filing of a summary judgment motion."  Order (Doc. 24).[1]  Because "[t]he facts do not appear to be in dispute," the district court directed "the parties [to] enter into a stipulation of fact for the purpose of the summary judgment motion."  *Id.*  After the parties agreed on the stipulation, MB&W moved for summary judgment.  The district court granted the motion, holding that the money MB&W sought from Surber failed to qualify as a debt under the FDCPA.  This is Surber's appeal.

## II.

We review *de novo* a district court's grant of summary judgment.  *Brown v. Sec'y of State of Fla.*, 668 F.3d 1271, 1274 (11th Cir. 2012).  Summary judgment is appropriate "where the moving party . . . 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014) (quoting Fed.

---

[1] Citations to "Doc." refer to docket entries in the district court record in this case.

3

R. Civ. P. 56(a)), *cert. denied*, 153 S. Ct. 1423 (2015). "In reviewing the material facts, we draw all inferences in favor of the nonmoving party," here, Surber. *Id.*

### III.

Surber claims that MB&W violated the FDCPA. We have explained that "[t]o recover under . . . the FDCPA . . . , a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010). The FDCPA defines a "debt" as an "obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). In other words, the FDCPA applies "only when an obligation to pay arises out of a specified transaction." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998); *see also Oppenheim*, 627 F.3d at 837 ("The statute thus makes clear that the mere obligation to pay does not constitute a 'debt' under the FDCPA."). We understand the phrase "arising out of," as used in the FDCPA, to have its ordinary meaning of "originating from, incident to, or connected with the item in question." *Rouse v. Greyhound Rent-A-Car, Inc.*, 506 F.2d 410, 414 n.3 (5th Cir. 1975).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

For her obligation to Bankers Life to qualify as a debt, Surber must show that it originated from a transaction in which the money or services that were the subject of the transaction were primarily for personal, family, or household purposes. *See* 15 U.S.C. § 1692(a)(5). She has failed to make this showing. Her obligation to pay Bankers Life grew out of a commercial contractual relationship in which she sold Bankers Life insurance policies for a commission. Although Bankers Life paid Surber a commission based on a policy's annual premium even if the insured had not yet paid the annual premium in full, it retained the right to charge back and recover from Surber a portion of the commission if an insured failed to pay the entire annual premium. The undisputed evidence shows that her obligation arose from this arrangement.

Surber contends that a reasonable jury could conclude that Bankers Life loaned her money, which she then used for personal or household purposes. But she has failed to come forward with evidence from which a reasonable jury could conclude that Bankers Life loaned her money. Instead, the undisputed evidence shows that she owed money to Bankers Life because of charge backs—adjustments—for overpaid commissions.[3] In other words, given the fundamentally

---

[3] To support her argument that Bankers Life loaned her money, Surber relies heavily on the non-precedential district court opinion in *Thompson v. Diversified Adjustment Services, Inc.*, No. 12-922, 2013 WL 3973976 (S.D. Tex. July 31, 2013). In *Thompson*, an insurance company paid commissions to an agent who sold insurance policies. The insurance company also agreed that the agent could request a loan at any time from the insurance company with no further documentation needed to evidence or secure the loan. *Id.* at *1. When the agent and insurance

5

commercial nature of this transaction, we cannot say that a reasonable jury could conclude that Surber's obligation to pay MB&W originated from a transaction that was primarily for personal, family, or household purposes.[4]

Surber also argues that because she used her commissions for personal expenses, her obligation to Bankers Life arose from a transaction primarily for personal, family, or household purposes. In essence, she asks us to look past the transaction that gave rise to her obligation—that is, her business relationship with Bankers Life—and focus on how she used the money after the transaction. But the plain language of the FDCPA requires us to consider whether her obligation to pay

---

company terminated their relationship, the agent owed the insurance company money. The insurance company hired a collection agency to recover the money. The agent sued the collection agency under the FDCPA. At summary judgment, the collection agency argued that the agent's obligation failed to qualify as a debt because the money she owed was for overpaid commissions. *Id.* at *2. But the agent offered evidence showing that the money she owed was not for overpaid commissions but instead a separate loan from the insurance company that she used for personal purposes. The district court denied summary judgment because a reasonable jury could conclude that the agent's obligation arose from a loan, not overpaid commissions, and thus it qualified as a debt under the FDCPA. *Id.* at *9. This case is different from *Thompson* because Surber has come forward with no evidence showing that Bankers Life had loaned her money.

[4] Surber argues for the first time on appeal that the district court lacked authority under Federal Rule of Civil Procedure 16(b) to compel the parties to stipulate to facts. When Surber stipulated to facts in the district court, she raised no objection that the district court's request for a stipulation was improper. We will not consider this argument raised for the first time on appeal. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994).

Surber also argues that the district court should have given her an opportunity to take discovery to show that Bankers Life loaned her money. Under Federal Rule of Civil Procedure 56(d), a party opposing a summary judgment motion may submit affidavits or declarations to show that she "cannot present facts essential to justify [her] opposition" and to seek additional discovery before the court rules on summary judgment. Fed. R. Civ. P. 56(d). Surber made no such request in the district court. Accordingly, we conclude that the district court did not abuse its discretion in ruling on MB&W's summary judgment motion. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1063-64 (11th Cir. 2015).

Bankers Life arose out of a transaction in which the subject of the transaction was primarily for personally, family, or household purposes.  *See* 15 U.S.C. § 1692a(5).  Thus, contrary to Surber's argument, we must focus on the transaction in which the obligation originated.

IV.

The district court properly granted summary judgment to MB&W because Surber failed to come forward with evidence creating a disputed question of material fact as to whether her obligation to Bankers Life qualified as a debt under the FDCPA.  We therefore affirm the district court's entry of summary judgment.

**AFFIRMED**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 31, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-12296-FF
Case Style: Sara Surber v. McCarthy, Burgess & Wolff, Inc
District Court Docket No: 1:14-cv-00309-CG-M

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs